UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| NEISHA (CHINNERY) TYIESE; | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | Case No.: |
| | ) | |
| v. | ) | JURY IS DEMANDED |
| | ) | |
| | ) | |
| KAISER PERMANENTE; | ) | August 21, 2023 |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

## **COMPLAINT**

COMES NOW, Neisha (Chinnery) Tyiese, by attorney, and hereby states the following in support of her Complaint and Jury Demand against Defendant Kaiser Permanente ("Defendant") and alleges:

## **INTRODUCTION**

1.      This action arises out of the conduct of Kaiser Permanente (Kaiser), which did not take into account the right of Plaintiff Naisha Tyiease to a religious accommodation when it adopted a mandatory COVID-19 testing policy.

2.      Unfortunately for Ms. Tyiese, the result of having sincere religious beliefs that conflicted with the mandatory Covid-19 vaccine was that she was forced to defend her most deeply held religious beliefs and still ultimately lost her job.

3.      Defendant violated Title VII of the Civil Rights Act of 1963 ("Title VII") when it failed to accommodate Ms. Tyiese's request for a religious accommodation from its Covid-19

1

vaccine mandate and then rescinded its offer of employment after she complained about the denial.

4.      Defendant withdrew its offer of employment directly after Ms. Tyiese asked for a religious accommodation and then notified them that she was filing a religious discrimination claim, but not because Ms. Tyiese was unqualified to perform the functions of her job, but because her religious beliefs prevented her from accepting the vaccine.

## PARTIES

5.      Plaintiff Neisha Tyiese (née Chinnery) is a faithful Christian who was hired by Defendant at the Falls Church Medical Center in Falls Church, Virginia as an Assistant in its Hearing Center.

6.      Defendant Kaiser Permanente is one of the nation's largest not-for-profit health plans, serving 12.7 million members. It runs the Otolaryngology – Head and Neck Surgery Institute in Falls Church, VA.

## JURISDICTION

7.      This Court has Jurisdiction, and Venue is proper, under 42 U.S.C. § 2000e-5(f)(3) because the Defendant is located in Fall Church, Virginia, and this is the judicial district in which the employment records relevant to her employment are maintained and administered, and in which she would have worked but for the alleged unlawful employment practice.

8.      This Court also has jurisdiction under 28 U.S.C. §1331 and §1343(a)(4) 2201.

## FACTUAL BACKGROUND

9.      COVID-19 was declared to have reached pandemic status on March 11, 2020.

10.     Yet as early as August 2021, it was public knowledge that while the vaccine worked well in preventing severe illness and death, it did "not prevent transmission" of the

diseaase. Holcombe and Maxouris, *CDC head says COVID-19 vaccines prevent severe illness and death, but they can't prevent transmission*, CNN.com, (August 16, 2021), at https://www.cnn.com/us/live-news/coronavirus-pandemic-vaccine-updates-08-06-21/h_61de1502e86060f5faf4477339928e33.

11.     As late as one year later, employers, including Defendant, were still forcing employees to take the vaccine, even though it had not received full approval from the FDA.

12.     The impacts of those coercive actions are still coming to light, as in the instant case.

13.     After a successful job interview on June 8, 2022, Kaiser offered Ms. Naisha Tyiese a full-time position with Kaiser Permanente on June 20, 2022.  She accepted the offer by email the same day.

14.     Ms. Tyiese was hired at Defendant's Falls Church Medical Center - Head and Neck-Hearing Aid Center, as an Assistant at its Hearing Center.

15.     On June 28, 2022, having learned that her new employer required employees to be vaccinated against Covid-19, Ms. Tyiese requested a religious exemption.

16.     The religious accommodation request form was intimidating, onerous, and invasive.

17.     It specified that she must disclose her religious beliefs and "the specific doctrine or teaching that prevents [her] from receiving the Covid-19 vaccine," including when she began holding such practices or beliefs.

18.     It also requested detailed information about whether or not she had taken other vaccines, asking for a detailed explanation about why or why not, including which doctrine,

practice, observance or religion prevented her from taking vaccines and how the Covid-19 vaccine was different from other vaccines if indeed she believed it was.

19.     Ms. Tyiese was open about her beliefs, notwithstanding the substantial discomfort she felt by disclosing her most personal religious beliefs with her new employer, with whom she had yet to develop any form of relationship or connection.

20.     She explained that "[a]nything that is unholy, unpure [*sic*], violates my body, faith and devotion to God will not be practiced… My beliefs are clear and held deeply in my heart. The Holy Scriptures states we are made in the image of God. We will be held accountable for all that we do including what is done with our bodies."

21.     Ms. Tyiese expressed her religious beliefs as follows:

As a Christian woman of faith, I am already ex[e]mpt from participating, or engaging in anything that violate[s] my sincerely held religious beliefs….my body is the Temple of the Holy Spirit and created by God in his image therefore, I seek to honor my Lord and Savior in every aspect of life. Genesis 1:27 "So God created man in his own image, in the image of God he created him; male and female he created them."

22.     She went on to explain:

My devotion is to the Lord and Savior, the most high God and as a Christian and a member of the body of Christ, my sincerely-held religious beliefs are an all e[n]compassing as aspect of my life. My Christianity and devoted belief in the most High God is to continue to abstain from anything unpure [*sic*]. My blood is sacred and life is found in the blood. My sincerely-held Christian beliefs do not allow me to place any foreign substances or be assaulted by a foreign body being inserted into my nasal passages (i.e., covid test) as my body is the temple of the Holy Spirit and is to remain pure. 1 Corinthians 6:19-20 states, "Do you not know that your bodies are Temples of the Holy Spirit, who is in you, whom you have received from God? You are not your own; Verse 20 – You were bought at a price. Therefore honor God with your bodies."

23.     On July 2, 2022, the Defendant questioned the sincerity of Ms. Tyiese's religious beliefs and sent an email requesting additional information stating, "[I]t has been determined that additional information is needed from you to further evaluate whether you have a sincerely held

religious belief, practice, or observance that prevents you from receiving any COVID-19 vaccine."

24.     In this request, Defendant states consequences for not providing complete and timely information, stating Ms. Tyiese "may receive a Notice of Denial," and that she "will be required to submit proof of completed vaccination (and/or booster where required) to be eligible for employment with Kaiser Permanente."

25.     The request for additional information presented two more questions for Ms. Tyiese to answer:

a)     How have you put this religious belief, practice, or observance into practice in other areas of your life? Please identify what else you refuse to do or put in your body because of this religious belief, practice, or observance that prevent you from getting a COVID-19/booster vaccine; and

b)     To the extent your religious belief, practice, or observance prevents you from receiving the COVID-19 vaccine because it is your belief that the COVID-19 vaccine will harm your body/temple, please explain why you believe the vaccine will be harmful?

26.     Ms. Tyiese responded three days later on July 5, 2022, with a lengthy email reiterating her deeply held religious beliefs.  Once again, she responded:

My FAITH is STRONG …I firmly believe that my body is a temple which was designed by God and created in his image and will not alter his design with anything foreign…my blood is deemed sacred.

27.     She also questioned the continued, heavy-handed and intimidating questioning which felt to her like her Christian beliefs, which as she stated were the most important aspect of her entire life, were being challenged by her new employer:

[M]y education, credentials, strong work ethic and over 14 years of experience to care for patients …should be the main focus …. My sincerely held religious beliefs should not be in question, nor be a burden to anyone and certainly be no hindrance in my ability to perform daily work duties. My Christian beliefs and values will continue to remain at the forefront of my life which includes my devotion to God. I will continue to honor and glorify God by keeping my body

pure no matter the persecution or how many times I am questioned in various forms, my answer remains the same. My body belongs to God, was created in his image and will remain clean, pure and holy."

28.     Notwithstanding her heartfelt response to Defendant's second request, Defendant denied her request for an accommodation to the vaccine by email on July 7, 2022, without explanation.

29.     The email was sent by Talent Acquisition, with employees Christine McCabe, Carsha Flowers, and Jessica Arzapalo copied.

30.     On the same day (July 7, 2022), Ms. Tyiese responded to the denial and asked where she could submit an appeal.

31.     On Friday, July 8, 2022, Jessica Arzapalo replied that "there is no appeal process after you've been denied. Please let me know if you would like to move forward with the vaccination."

32.     On July 8, 2022, Ms. Tyiese informed Jessica Azrapalo, Carsha Flowers, and Christine McCabe that she would be filing a religious discrimination complaint with the EEOC, the Virginia Office of Civil Rights, Arlington County District Attorney's Office and the Arlington County Human Rights Commissions Office.

33.     Just four days later, on July 12, 2022, Defendant, through its employee Lesa Gray Magee, formally and in writing rescinded the offer of fulltime employment to Ms. Tyiese for failure to comply with its Covid-19 vaccination policy.

34.     Ms. Tyiese has been denied employment and placed in financial distress and has suffered a loss of earnings and benefits, a loss of health insurance coverage, and a loss of career opportunity which impacted her earning capacity because of the denial of religious exemption. She suffered emotional distress due to the coercive pressure placed on her by her employer.

## CLAIMS FOR RELIEF

### COUNT I
### VIOLATION OF TITLE VII 42 U.S.C. § 2000e, *et seq.*
### RELIGIOUS DISCRIMINATION: FAILURE TO ACCOMMODATE

35.    The foregoing paragraphs are realleged and incorporated herein.

36.    Title VII of the Civil Rights Act of 1964 requires employers to accommodate the religious practice of their employees unless doing so would impose an undue hardship on the conduct of the employer's business. 42 U.S.C.S. § 2000e(j), *Groff v. DeJoy*, 143 S. Ct. 2279, 2286 (2023).

37.    As the Supreme Court has stated,

Title VII does not demand mere neutrality with regard to religious practices—that they be treated no worse than other practices. *Rather, it gives them favored treatment*, affirmatively obligating employers not "to fail or refuse to hire or discharge any individual . . . because of such individual's religious observance and practice.

*EEOC v. Abercrombie & Fitch Stores, Inc*., 575 U.S. 768, 775, 135 S. Ct. 2028, 2034 (2015) (emphasis added and internal citations omitted).

38.    Under Title VII, a plaintiff alleging religious discrimination based on a failure to accommodate:

[M]ust first set forth a *prima facie* case that (1) he had a bona fide religious belief, the practice of which conflicts with an employment duty; (2) he informed his employer of the belief and conflict; and (3) the employer discharged, threatened, or otherwise subjected him to an adverse employment action because of his inability to fulfill the job requirement.

*Gonzalez v. Hogg Ins. Group, Inc*., 2012 U.S. Dist. LEXIS 2101 (E.D.Va, 2012) *22 (*citing Chalmers v. Tulon Co*., 101 F.3d 1012, 1019 (4th Cir. 1996)

39.    The term "religion" includes:

All aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

7

40.     The fact that Ms. Tyiese holds clear religious objections to the vaccine is evidenced by the multitude of statements she attested to in her accommodation request and in additional emails to Defendants stating her "body is the Temple of the Holy Spirit and is to remain pure."

41.     Simply put, Ms. Tyiese's religious belief is that the Covid-19 vaccine is an impure substance that God would not countenance her putting into her body.

42.     Ms. Tyiese informed Defendant that her sincerely held religious beliefs conflicted with Defendant's COVID-19 vaccine mandate and requested a religious accommodation.

43.     In response, Defendant revoked her offer of employment, thus terminating any employment relationship.

44.     Ms. Tyiese has made a prima facie case of failure to failure to accommodate her religious beliefs under Title VII.

45.     As further evidence of such failure, Defendant never engaged in an interactive process to work to accommodate Ms. Tyiese's beliefs.

46.     The statutory framework for determining reasonable accommodation requires an interactive process and participation by both the employer and the employee. *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986) (stating that, consistent with the goals expressed in the legislative history of the religious accommodation provision, "courts have noted that bilateral cooperation is appropriate in the search for an acceptable reconciliation of the needs of the employee's religion and the exigencies of the employer's business").

47.     "Once an employee makes [an accommodation] request, the employer is obligated by law to engage in an interactive process – a meaningful dialogue." *Equal Emp. Opportunity Comm'n v. Chevron Phillips Chem. Co*., 570 F.3d 606, 621 (5th Cir. 2009).

48.     Defendants never requested or proposed that Ms. Tyiese participate in any discussion to consider the possibility of a fair and reasonable accommodation for her religious beliefs.

49.     Indeed, they are not permitted to treat her religious beliefs with "mere neutrality," or to treat them "no worse than other practices." *Abercrombie*, 575 U.S. at 775. Rather, their duty was to "give[] them favored treatment . . . not to fail or refuse to hire [her] . . . because of [her] religious observance and practice. *Id.*

50.     This Kaiser did not do.  Indeed, it put Ms. Tyiese through a second round of intrusive questions about her beliefs, and then without any personal engagement or even an explanation of why it made its decision, it denied her request for a religious accommodation and rescinded its offer of employment.

51.     It is not an employer's place to "question the correctness or even the plausibility of a plaintiff's religious understandings." *United States EEOC v. Consol Energy, Inc*. 860 F.3d 131, 142-143 (4th Cir. June 12, 2017).

52.     The "truth of a belief is not open to question." *Equal Emp. Opportunity Comm'n v. Publix Super Markets, Inc*., 471 F. Supp. 3d 684, 699 (M.D. Tenn. 2020); *citing United States v. Seeger*, 380 U.S. 163, 185 (1965); see also 29 C.F.R. § 1605.1 ("In most cases whether or not a practice or belief is religious is not at issue . . . [R]eligious practices . . . include moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views.").

53.     Defendant failed entirely even to try to accommodate Ms. Tyiese's religious beliefs, must less give her beliefs "favored treatment."

54.     By summer 2022—the pertinent time period in this case— it was well known that the vaccine did not reduce the spread of Covid.  Yet Kaiser enforced its mandate indiscriminately, even against those such as Ms. Tyiese, who were forced to either honor their deeply held religious faith or lose their livelihood.

55.     Defendant did not appropriately engage with Plaintiff to attempt to accommodate her beliefs.  It simply rescinded her offer of employment.

56.     Defendant could have offered Plaintiff multiple reasonable accommodations such as sanitizing, disinfecting, handwashing, respirator-wearing and masking, all of which are potential accommodations pursuant to EEOC Technical Guidance, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* at L.2, https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws.

57.     Defendant never even gave Plaintiff an explanation as to why a request for an accommodation would not work, and instead, terminated her employment completely. Such actions are a clear violation of Title VII.

### COUNT II
### VIOLATION OF TITLE VII 42 U.S.C. § 2000e, *et seq*.
### RELIGIOUS DISCRIMINATION: DISPARATE TREATMENT

58.     The foregoing paragraphs are realleged and incorporated herein.

59.     The Civil Rights Act of 1964 states in relevant part:

It shall be an unlawful employment practice for an employer –

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, **religion**, sex, or national origin. 42 U.S.C. § 2000e-2(a); § 2000e-16(a) (emphasis added).

60.     Under Title VII, it is unlawful to discriminate in any aspect of employment, including:

Hiring and firing; compensation, assignment, or classification of workers; transfer, promotion, layoff, or recall; job advertisements and recruitment; testing; use of employer facilities; training and apprenticeship programs; retirement plans, and benefits; other terms and conditions of employment.

42 U.S.C.§ 2000e-2(a); § 2000e-16(a) (emphasis added).

61.     "To assert a successful claim of religious discrimination . . . a plaintiff must either present direct evidence of discrimination, or, in the absence of direct evidence, present a prima facie case of indirect discrimination by showing (1) that he was a member of a protected class, (2) that he experienced an adverse employment action (3) that he was qualified for the position, and (4) that similarly-situated employees outside the protected class received more favorable treatment" *Rayyan v. Va. DOT*, 719 Fed. Appx. 198 (4th Cir. 2018); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

62.     Ms. Tyiese's sincerely held religious beliefs as described herein qualify her as a member of a protected class.

63.     Defendant rescinded Ms. Tyiese's offer of employment based on her religious objections to the vaccine.

64.     Ms. Tyiese was qualified for her position as is evidenced by over 14 years of experience and the fact that the Defendant hired her.

11

65.     Upon information and belief, Ms. Tyiese was treated differently than similarly situated employees in that prospective employees who did not assert religious objections to the vaccine were not terminated or threatened with termination or denied opportunities of employment.[1]

65.     Ms. Tyiese has suffered emotional and physical distress, mental and physical anguish, and the physical effects associated therewith because of the denial of her request, and so she will suffer in the future.

**COUNT III**
**TITLE VII 42 U.S.C. § 2000e, et seq.**
**RETALIATION**

66.     The foregoing paragraphs are realleged and incorporated herein.

67.     It is unlawful to take a materially adverse action against an individual because of a protected activity. *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006).

68.     "Retaliation occurs when an employer takes a materially adverse action because an applicant or employee asserts rights protected by the EEO laws." *Id.*

69.     To prove retaliation, the plaintiff must prove: 1) there is protected activity; 2) the employer took a materially adverse action; and 3) there is a requisite level of causal connection between the protected activity and the materially adverse action. *Guessous v. Fairview Prop. Invs.*, LLC, 828 F.3d 208, 2017 (4th Cir. 2017).

70.     First, Ms. Tyiese engaged in protected activity when she applied for a religious accommodation to the Defendant's Covid-19 vaccination mandate. U.S. Equal Opportunity Commission, *Retaliation,* https://www.eeoc.gov/retaliation ("It is unlawful to retaliate against

---

[1] Since Ms. Tyiese was never allowed to begin her employment with Defendant, she seeks discovery on the names of individuals who did not request religious accommodations to the vaccine and who were not terminated and/or did not have their job offers revoked.

applicants or employees for requesting accommodation of a disability or for a religious practice").

71.     More directly however, Ms. Tyiese engaged in protected activity when she contacted Defendant's employees, Jessica Azrapalo, Carsha Flowers, and Christine McCabe on July 8, 2022, and told them she planned to file a religious discrimination complaint with the EEOC, the Virginia Office of Civil Rights, Arlington County District Attorney's Office and the Arlington County Human Rights Commissions Office.

72.     Second, Defendant took a materially adverse action against Ms. Tyiese when it unilaterally revoked it offer of employment to Ms. Tyiese, via email from Lesa Gray Magee just four days later on July 12, 2022.

73.     Third, there exists the requisite level of causal connection between the protected activity and adverse employment action.  *Guessous*, 828 F.3d at 2017.

74.     "[T]emporal proximity between an employer's knowledge of protected activity and an adverse employment action suffices to establish a *prima facie* case of causation where the temporal proximity is "very close."  *Jenkins v. Gaylord Entm't Co*., 840 F. Supp. 2d 873, 881 (D. Md., 2012) (*citing Clark County Sch. Dist. v Breeden*, 532 U.S. 268, 273-74 (2001)

75.     Here, Defendant revoked Ms. Tyiese's offer of employment just four days after she notified them that she was filing a complaint of religious discrimination.  This "very close" time period establishes the requisite causal connection.

76.     Accordingly, Defendant retaliated against Ms. Tyiese when it rescinded her offer of employment after she notified she was filing a complaint of discrimination.

77.     Ms. Tyiese has suffered emotional and physical distress, mental and physical anguish, and the physical effects associated therewith because of the denial of her request, and so she will suffer in the future.

78.     Ms. Tyiese has been denied employment and placed in financial distress and has suffered a loss of earnings and benefits, a loss of health insurance coverage, and a loss of her earning capacity because her professional career was disrupted by Defendant's actions.

## PRAYER FOR RELIEF

79.     Plaintiff respectfully requests that the Court award the following:

    (a) Compensatory damages for monetary and non-monetary loss;

    (b) Exemplary and punitive damages;

    (c) Prejudgment interest;

    (d) Reasonable attorney's fees; and,

    (e) Such other relief as law or equity may pertain.

## JURY TRIAL

80.     A jury trial is requested in this matter.

Dated: August 21, 2023

Respectfully Submitted,

E. Scott Lloyd
Virginia Bar # 76989
Lloyd·Lemmon, PLLC
15 Chester St.

14

Front Royal, VA 22630
(540) 823-1110
(540) 631-4081
scott@lloydlemmon.com
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I will cause the foregoing to be served upon the Department on August 22, 2023.

E. SCOTT LLOYD