IN IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

NAISHA TYIEASE CHINNERY,
    Plaintiff,

v.                                                                                    Civil No. 1:23cv1110 (DJN)

KAISER FOUNDATION HEALTH PLAN
OF THE MID-ATLANTIC STATES, INC.,
    Defendant.

## MEMORANDUM OPINION
### (Granting Defendant's Motion to Dismiss)

This employment dispute arises out of Plaintiff Naisha Tyiease Chinnery's refusal to comply with the mandatory vaccination policy of her prospective employer, Defendant Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc. ("Kaiser"). Chinnery applied for but was denied a religious accommodation to the policy, and, having failed to obtain the requisite vaccine, was promptly terminated by Kaiser. In Chinnery's view, she was vilified for her sincerely held religious beliefs, which cut against the prevailing social discord of the time. She now brings three claims for (i) failure to accommodate, (ii) disparate treatment and (iii) retaliation, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Kaiser posits that Chinnery is simply a disgruntled applicant who spurned a general condition of employment and suffered the natural consequences. Kaiser moves to dismiss all claims under Fed. R. Civ. P. 12(b)(6). (ECF No. 17). For the reasons below, the Court will GRANT Kaiser's Motion.

### I.    BACKGROUND

The Court assumes the validity of the facts as alleged in Plaintiff's Amended Complaint

("AC" (ECF No. 5)) for purposes of this Memorandum Opinion. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Ms. Chinnery is a faithful Christian with over fourteen years of experience caring for patients. (AC ¶¶ 5, 27, 64). Scripture and her Christian values inspire Chinnery to the belief that her "blood is [] sacred" and her "body is a temple which was designed by God," and therefore neither should be altered "with anything foreign." (*Id.* ¶ 26). She believes that she extolls and glorifies God "by keeping [her] body pure." (*Id.* ¶¶ 26–27).

On June 20, 2022, amid a federally declared public health emergency and as the COVID-19 pandemic swept across the globe, Chinnery applied for and obtained a position with Kaiser — "one of the nation's largest" nonprofit healthcare providers — at its Falls Church Medical Center.[1] (*Id.* ¶¶ 6, 9, 13–14). Like many employers at that time, Kaiser sought to protect against the scourge of the virus by requiring its employees to obtain a COVID-19 vaccine. But this vaccine policy was not inviolate; employees could request an exemption if they demonstrated a religious objection to the shot.

Eight days after she was hired, on June 28, Chinnery learned of Kaiser's vaccine policy and promptly requested a faith-based exception. (*Id.* ¶ 15). This request kicked off the first harbinger of discord in the employment relationship. Kaiser's religious accommodation form required employees to disclose "the specific doctrine or teaching" to which they subscribed, how their religious observance conflicted with vaccination, whether they had previously "taken other

---

[1] *See* Health & Human Servs. Admin. For Strategic Preparedness & Response, *Declarations of a Public Health Emergency* https://aspr.hhs.gov/legal/PHE/Pages/default.aspx [https://perma.cc/74VC-FDVN] (declaring a public health emergency due to a novel coronavirus from January 31, 2020, to May 11, 2023). The Court may appropriately take judicial notice "of information contained on . . . government websites." *United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017).

vaccines" and, if so, "how the COVID-19 vaccine" differed from those other vaccines. (*Id.* ¶¶ 17–19). Chinnery found the form "intimidating, onerous, and invasive," and she experienced "substantial discomfort" in completing the accommodation process. (*Id.* ¶¶ 16, 19).

Notwithstanding her misgivings, Chinnery informed Kaiser that she was "a Christian woman of faith" whose "body is the Temple of the Holy Spirit and created by God in [H]is image," and that anything "unholy, unpure (*sic*), violates my body, faith and devotion to God," because "[m]y blood is sacred and life is found in the blood." (*Id.* ¶¶ 20–22). She added that her "sincerely-held Christian beliefs do not allow me to place any foreign substances . . . into my nasal passages (*i.e.*, covid test) as my body is the temple of the Holy Spirit and is to remain pure." (*Id.*) Chinnery accompanied her explanation with supporting citations to scripture. This summation of faith failed to spark an amicable resolution of Chinnery's accommodation request.

On July 2, Kaiser informed Chinnery that her completed form contained insufficient detail to qualify for a religious exemption, but that the deficiency was corrigible. (*Id.* ¶ 23). To do so, Kaiser demanded that Chinnery recount how she "put this religious belief . . . into practice in other areas of your life," "what else you refuse to do or put in your body because of this religious belief" and "to the extent . . . it is your belief that the COVID-19 vaccine will harm your body/temple, please explain why you believe the vaccine will be harmful." (*Id.* ¶ 25). Kaiser also warned Chinnery that if she failed to answer these questions, her failure could result in a denial of her accommodation and thus require proof of inoculation to remain eligible for employment. (*Id.* ¶ 24). Chinnery took umbrage with Kaiser's questions and its ultimatum, which she felt derided her faith and maligned the sincerity of her religious beliefs. (*Id.* ¶¶ 23,

3

27).

On July 5, Chinnery emailed Kaiser to explain that her "STRONG" "Christian beliefs and values" — which are "at the forefront of [her] life" — required her to keep her body "clean, pure and holy."  (*Id.* ¶¶ 26–27).  In that same email, Chinnery reiterated her workplace credentials and posited that her religious beliefs would not burden anyone or undermine her ability to perform the duties of the position.  (*Id.*)  Much to Chinnery's chagrin, these details failed to assuage Kaiser, who on July 7 determined that she would not be exempt from the vaccination requirement.  (*Id.* ¶ 28).  The next day, July 8, Chinnery informed Kaiser that she planned to file a religious discrimination claim with the Arlington County Human Rights Commission, District Attorney, Virginia Office of Civil Rights and the Equal Employment Opportunity Commission ("EEOC").  (*Id.* ¶ 32).  On July 12, 2022, Kaiser rescinded Chinnery's employment offer due to her refusal to take the COVID vaccine.  (*Id.* ¶ 33).

Chinnery commenced this lawsuit on August 21, 2023.  (ECF No. 1).  Evidently, she was not the only prospective hire perturbed by Kaiser's vaccination policy; a constellation of at least fifteen other former employees sued Kaiser over its failure to accommodate their religious beliefs, and Kaiser sought consolidation of the cases by the Judicial Panel on Multidistrict Litigation ("MDL").  (ECF No. 8).  The Court stayed this matter pending resolution by the MDL panel (ECF No. 10), which denied consolidation of the disparate actions on January 30, 2024.  (ECF No. 12).  With the stay dissolved, Kaiser moved to dismiss Chinnery's claims on February 22.  (ECF No. 17).  That motion has now been fully briefed and thus stands ripe for disposition.

## II.     STANDARD OF REVIEW

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint.  *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).  To survive a 12(b)(6) motion, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).  In this procedural posture, a court "must accept as true all of the factual allegations contained in the complaint."  *Erickson*, 551 U.S. at 94.  But those allegations must contain more than "naked assertions devoid of further factual enhancement," *Iqbal*, 556 U.S. at 678 (internal alterations and quotations omitted), and a district court need not "accept as true a legal conclusion couched as a factual allegation."  *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014).

## III.    ANALYSIS

Chinnery alleges that Kaiser failed to accommodate her religious beliefs, engaged in disparate treatment and retaliated against her for protected activities.  Kaiser argues that each of these claims fails, because Chinnery has not pled (i) a religious objection to its vaccine mandate, (ii) that she was qualified for the position or that others were treated more favorably, or (iii) a causal nexus between her protected activity and her termination by Kaiser.  (Def.'s Br. (ECF No. 18) at 1–2).  The Court addresses each in turn.

### A.     Failure to Accommodate

Under Title VII, it is unlawful for employers "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual . . . because of such individual's . . . religion."  42 U.S.C. § 2000e–2(a)(1).  The statute excludes from its definition of religion

any instance where an employer can show that it cannot "reasonably accommodate [] an employee's or prospective employee's religious observance or practice without undue hardship." *Id.* § 20003(j). In other words, Title VII imposes a duty on employers to reasonably accommodate their employees and prospective employees' religious practices, unless such accommodation "would result in undue hardship" on the employer. 29 C.F.R. § 1605.2(b)(1); *see Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 75 (1977) (similarly interpreting Title VII's language).

To establish a prima facie case of failure to accommodate, a plaintiff must plausibly allege that she (1) "has a bona fide religious belief that conflicts with an employment requirement; (2) [] informed the employer of this belief; [and] (3) [] was disciplined for failure to comply with the conflicting employment requirement." *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1019 (4th Cir. 1996).[2] The parties do not dispute that Chinnery informed Kaiser of her religious belief or that she faced adverse repercussions for flouting Kaiser's policy. Kaiser rests its argument on the claim that Chinnery's "objection to the COVID-19 vaccine is not based on a religious belief" but on her vexations about the vaccine's safety and efficacy. (Def.'s Br. at 5).

### 1. Kaiser's proffered test for religiosity

Religion is a notoriously difficult concept to define. One court has labeled its boundaries "inherent[ly] ambigu[ous]." *Young Israel of Tampa, Inc. v. Hillsborough Area Reg'l*

---

[2] A plaintiff "need not plead a prima facie case of discrimination" to survive a motion to dismiss. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002). But a complaint must nevertheless plead facts sufficient to plausibly "satisfy the elements of a cause of action created by [] statute." *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 585 (4th Cir. 2015).

*Transit Auth.*, 89 F.4th 1337, 1348 (11th Cir. 2024). Another has explained that it would be "judicially impossibl[e]" to provide "a succinct and comprehensive definition" of the term. *Remmers v. Brewer*, 361 F. Supp. 537, 540 (S.D. Iowa 1973), *aff'd*, 494 F.2d 1277 (8th Cir. 1974). Congress has fared little better. Title VII includes the incredibly broad and conclusory definition that religion constitutes "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 20003(j). Kaiser urges the Court to embrace the Third Circuit's test for religion — which Kaiser notes has been employed by this Court — that asks whether a belief: (1) "addresses fundamental and ultimate questions" pertaining to "deep and imponderable matters"; (2) "is comprehensive in nature" such that "it consists of a belief-system as opposed to an isolated teaching"; and (3) is "accompanied by certain formal and external signs" *Africa v. Pennsylvania*, 662 F.2d 1025, 1032 (3d Cir. 1981).

The Court finds that test uncontrolling and unpersuasive. Kaiser correctly notes that *Africa* has been favorably cited by the Fourth Circuit, but those cases do not explicitly or implicitly adopt its tripartite framework.[3] Indeed, subsequent Fourth Circuit caselaw adopted an entirely distinct test that asked whether beliefs "are (1) sincerely held and (2) religion in nature under [plaintiff's] 'scheme of things.'" *Moore-King v. Cnty. of Chesterfield, Va.*, 708 F.3d 560, 571 (4th Cir. 2013) (quoting *United States v. Seeger*, 380 U.S. 163, 185 (1965)), *abrogated by Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755 (2018). And while some courts in this District have relied on *Africa*'s indicia of religiosity, it constitutes only one of the many tests

---

[3] *See Dettmer v. Landon*, 799 F.2d 929, 931 (4th Cir. 1986) (including *Africa* in a string cite as support for the proposition religious doctrines concern ultimate questions of human life); *Doswell v. Smith*, 139 F.3d 888, 1998 WL 110161, at *3 (4th Cir. 1998) (unpublished Table decision) (quoting language from *Africa* concerning the difficulty of defining religion).

7

employed in the Eastern District of Virginia.[4]

Even as a source of nonbinding authority, the Court sees little merit in employing the *Africa* framework. Its test cries of arbitrary — and impermissible — judicial subjectivity. How does a judge decide neutrally whether a belief system pertains to an "ultimate question" of an "imponderable" matter? And what should a Court to do with the requirement that religions come with "certain formal . . . signs"? Such amorphous requirements are likely to lead even good-faith jurists to revert to their own biases of what constitutes a *bona fide* faith. Moreover, courts toe a dangerous line when they hold plaintiffs' feet to the fire on the religious nature of their beliefs. The very inquiry stands antithetical to the Supreme Court's repeated and emphatic guidance in this area.

The Supreme Court has cautioned that religious practitioners may not have their beliefs rendered "suspect before the law," because faiths that are "incomprehensible" to some "are as real as life" to others. *United States v. Ballard*, 322 U.S. 78, 86 (1944). Writing a generation later, the Court explained that if a plaintiff's sincerely held beliefs are "religious" "in his own scheme of things," then that ends the judicial inquiry. *United States v. Seeger*, 380 U.S. 163, 184–85 (1965). Even after a full churn in membership of the Court's bench, it doubled down and held that whether a particular belief is religious cannot "turn upon [] judicial perception[s]." *Thomas v. Rev. Bd. of the Ind. Emp. Sec. Div.*, 450 U.S. 707, 714 (1981). *Thomas* admonished

---

[4] *Compare Ellison v. Inova Health Care Servs.*, 2023 WL 6038016, at *4 (E.D. Va. Sept. 14, 2023) (adopting the *Africa* test) *with Versatile v. Johnson*, 2011 WL 5119259, at *5–6 (E.D. Va. Oct. 27, 2011) (employing an amalgam of the Third Circuit's three-part *Africa* test and a competing five-part test from the Tenth Circuit), *aff'd*, 474 F. App'x 385 (4th Cir. 2012) *and Coward v. Robinson*, 276 F. Supp. 3d 544, 565 & n.19 (E.D. Va. 2017) (noting that courts in this district have relied on both the Third and Tenth Circuit tests but choosing instead to follow the Fourth Circuit's *Moore-King* framework).

the lower court for delineating between a "personal philosophical choice" and "a religious choice" and explained that the "narrow" role for a district court "is to determine whether . . . the [plaintiff] . . . [holds] an honest conviction." *Id.* at 714, 716.  And in a pair of cases just a few years later, the Court concluded that it "is not within the judicial ken" to question a litigant's "particular beliefs or practices," because "no principle of law or logic can be brought to bear to contradict . . . personal faith."  *Hernandez v. Commissioner*, 490 U.S. 680, 699 (1989); *Emp. Div., Dep't of Hum. Res. of Oregon v. Smith*, 494 U.S. 872, 887 (1990).

This Court therefore declines to employ *Africa* or any other test that would require it to scrutinize whether Plaintiff's beliefs are "religious" beliefs.  "Heresy trial are foreign to our Constitution," and one will not be conducted in this proceeding.  *Ballard*, 322 U.S. at 86.  This is particularly true at the motion to dismiss stage, where a plaintiff's job is to plead, not to prove.  Aside from a blanket assertion in the complaint that a belief is religious, it is unclear what more a plaintiff can or should do.  Chinnery has provided precisely this:  the Amended Complaint states that her "Christian . . . faith" compels the belief that her "body is the Temple of the Holy Spirit," her "blood is sacred" and that both must be kept "[]pure" by avoiding "any foreign substances . . . being inserted" therein.  (AC ¶¶ 21–22).  The Court must therefore reject Kaiser's claim that Chinnery's beliefs are "not sufficiently 'religious in nature' to survive dismissal." (Def's Br. at 5).

### 2. Whether Chinnery's beliefs conflict with Kaiser's policies

Count I of Chinnery's Amended Complaint nevertheless cannot survive, because she has not plausibly alleged that she either sincerely subscribes to the religious beliefs that she espouses or that such beliefs conflict with Kaiser's vaccine policy.  According to Chinnery, her faith

requires her to keep her "body pure" and she thus eschews the introduction of "any foreign substances" into her body. (AC ¶¶ 22, 27). That allegation cannot be taken at face value. It is impossible to believe that Chinnery leads an ascetic life free from all foreign substances. The food that she eats; the water that she drinks; the very air that she breathes — all are substances foreign to her body. Yet Chinnery indulges these activities consistent with her Christian faith. The Amended Complaint does not contain so much as a scintilla of explanation to differentiate between the COVID vaccine and a mid-afternoon snack. Both are substances foreign to the body. Yet Chinnery objects to the former while embracing the latter.

Elsewhere, Chinnery explains that — because her body "is the Temple of the Holy Spirit" — it must "remain clean, pure and holy." (*Id.* ¶¶ 21, 27). But she has not plausibly pled what about the COVID vaccine turns her Temple of God into the Temple of Doom. Put another way, there is no facial dissonance between a belief that God requires us to keep our bodies pure and receipt of a vaccine. For Chinnery to plausibly allege a conflict between her faith and Kaiser's workplace policies, she must explain why the COVID vaccine defiles God's design. Yet her only account of what renders the vaccine "[im]pure" is its foreignness to her body. (*Id.* ¶¶ 20, 22). As explained, that claim simply cannot stand muster.

Indeed, the only inkling Chinnery offers for her unique enmity to the COVID vaccine sounds in secular concerns.[5] To be clear, the Court accepts that the axioms of Chinnery's Christian faith constitute a belief that her "body is the Temple of the Holy Spirit" and should therefore remain "pure." (*Id.* ¶ 21). And if Chinnery subscribed to a religion that allowed

---

[5]   In Chinnery's view, it was "public knowledge" that the vaccine — which "had not received full approval from the FDA" — could not "prevent transmission" of COVID-19, and therefore Kaiser should not have "forc[ed] employees" to take it. (*Id.* ¶¶ 10–11).

certain foreign substances into the body while prohibiting others, that could suffice to advance past the pleadings stage, even if the Court did not find the religion to be "acceptable, logical, consistent, or comprehensible." *Thomas*, 450 U.S. at 714. The problem is that Chinnery has not pled such a belief system here.

A review of comparable cases helps illuminate the pleading deficiencies present here. In recent years, the federal courts have been inundated with a deluge of body-as-a-temple claims against mandatory vaccine policies. Cases dismissing these claims are legion.[6] These dismissals crystalize around one unifying theme: a conviction that glorification of self glorifies the Lord, accepted as true, does not plead a conflict with vaccination. The problem is not the faith; similar adherents to Chinnery's brand of Christianity have successfully pled Title VII claims. Those claimants have done so by pointing to specific and plausible grounds for why the vaccine clashes with the tenants of their religion. For example, objecting to a vaccine on the grounds that it contains or was developed using ingredients prohibited by one's faith, such as fetal cells or pork products, suffices to "plausibly connect [a] refusal to receive the vaccine with

---

[6] *See, e.g.*, *Ellison*, 2023 WL 6038016, at *5–6; *Passarella v. Aspirus, Inc.*, 2023 WL 2455681, at *2, 6–7 (W.D. Wis. Mar. 10, 2023) (pleading that one's "body is a temple of the Holy Spirit" does not "articulate a[] religious belief that would prevent [] taking [a] vaccine" as a "religious belief that the body is a temple of God is not itself inconsistent with receiving a vaccine"); *Sturgill v. Am. Red Cross*, 2023 WL 8701293, at *6 (E.D. Mich. Dec. 15, 2023) (citations to scripture describing "the human body as God's temple and espous[ing] the value of protecting it" does not illustrate why a plaintiff "thinks taking the COVID-19 vaccine violates her religious beliefs"); *Craven v. Shriners Hospitals for Children*, 2024 WL 21557, at *4 (D. Ore. Jan. 2, 2024) ("whether Plaintiff's body is a temple has no bearing" on whether his objections to the vaccine are religious in nature); *McCoy v. Cox Commc'n*, No. 1:22cv1289 (E.D. Va. Jan. 22, 2024) (ECF No. 38 at 6–8) (a religious belief against placing foreign or unnatural substances in the body "cannot be read literally" and does not plead a conflict with a COVID testing policy); *Rhonda Spa, v. Aiken/Barnwell Ctys. Cmty. Action Agency, Inc.*, 2024 WL 2848492, at *5 (D.S.C. Mar. 1, 2024) (collecting similar cases)*, report and recommendation adopted*, 2024 WL 2315293 (D.S.C. May 22, 2024).

[] religious beliefs," such as the sanctity of the body as a temple to God. *Ringhofer v. Mayo Clinic, Ambulance*, 102 F.4th 894, 901 (8th Cir. 2024); *see Haley v. Cmty. Hosp.*, 2023 WL 403722, at *6 (N.D. Ind. Jan. 25, 2023). But a blanket objection to anything "foreign" or "impure" does not plausibly plead a religious conflict, since such statements cannot be taken literally and do not explain what renders a vaccine foreign or impure. For these reasons, the Court will dismiss with prejudice Count I of the Amended Complaint.[7]

### B.  Disparate Treatment

Chinnery also pleads religious discrimination under a disparate treatment framework. Title VII "prohibits two categories of employment practices . . . often referred to as [] 'disparate treatment' . . . and [] 'disparate impact.'" *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 771 (2015). Disparate treatment involves "discriminat[ion] against an[] individual . . . because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1); *see Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1017 (4th Cir. 1996) (explaining that this provision allows claims under both a disparate treatment theory and a failure to accommodate theory). To prove disparate treatment, "an employee must demonstrate that the employer treated her differently than other employees because of her religious belief." *Id.* The discriminatory motive need only be "one of the employer's motives" to establish liability, "even if the employer also had

---

[7] The deficiencies identified in Chinnery's Amended Complaint are incurable through further amendment, as she cannot retroactively supplement her religious conflict as she framed it to Kaiser when it denied her exemption. In other words, even if Chinnery were to now provide a more fulsome explanation of her religious objection to the vaccine, such grounds would have been unknown to Kaiser at the time that it declined Chinnery's accommodation. When a claim stands "incurable through amendment, dismissal" must be "rendered with prejudice and without leave to amend." *United States ex rel. Carson v. Manor Care, Inc.*, 851 F.3d 293, 305 n.6 (4th Cir. 2017).

other, lawful motives that were causative in the employer's decision." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 343 (2013).  But an employer's motivation for workplace conduct is often an "elusive factual question." *Tex Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 255 n.8 (1981).  Absent direct evidence of motives, a plaintiff can rely on the *McDonnell Douglas* burden shifting framework, under which a plaintiff first establishes a prima facie case of discrimination, then the burden shifts to the employer to offer a legitimate, nondiscriminatory reason for the conduct, and, if the employer does, the plaintiff must then show that the employer's explanation is pretextual.  *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802–03 (1973).

To establish a primae facie case, a plaintiff must plausibly allege (1) membership in a protected class, (2) qualification for the job, (3) an adverse employment action and (4) different treatment than similarly situated employees outside the protected class.  *Abeles v. Metro. Wash. Airports Auth.*, 676 F. App'x 170, 174 (4th Cir. 2017).  Although a plaintiff "need not plead a prima facie case . . . to withstand a motion to dismiss," *Holloway v. Maryland*, 32 F.4th 293, 298 (4th Cir. 2022), she must plead facts sufficient to plausibly "satisfy the elements of a cause of action created by [] statute."  *McCleary-Evans*, 780 F.3d at 585.

Chinnery's disparate treatment claim fails, because she has not alleged that she faced differential treatment because of her religion.  The Amended Complaint alleges that "Chinnery was treated differently than similarly situated employees in that prospective employees who did not assert religious objections to the vaccine were not terminated."  (AC ¶ 65).  This allegation obscures more than it illuminates insofar as it blurs the relevant comparator:  those who sought secular exemptions or those who sought no exemption.  The category of those who asserted no

13

religious objection includes both, and insofar as Chinnery compares herself to the latter, that does not suggest religious animus but neutral enforcement of Kaiser's vaccine policy.  Chinnery compounds this error in her opposition brief, which expounds that "[b]y virtue of the operation of the mandate . . . and the offer of employment before its recission, we known that those who did not share Ms. Chinnery's religious beliefs were able to obtain and keep employment" with Kaiser.  (Pl. Br. (ECF No. 19) at 8).  Those who do not share Chinnery's religious beliefs includes those who have no objection to vaccination, and Chinnery does not allege that it was her faith — rather than her refusal to inoculate against the virus — that motivated Kaiser's conduct.

Indeed, Chinnery's allegations align with Kaiser operating and enforcing a neutral vaccine policy for all employees and putative employees:  those who did not object to the policy were hired, those who did were not.  To survive a motion to dismiss, Chinnery need not plead facts to rebut Kaiser's legitimate, nondiscriminatory reason for her termination.  *Woods v. City of Greensboro*, 855 F.3d 639, 649 (4th Cir. 2017).  But the pleadings lack any basis to find that religion — rather than vaccine status — formed the basis of Kaiser's hiring decisions.  Nor can the mere presence of an accommodation process salvage Chinnery's claim.  Absent rote speculation, the Court cannot discern whether any exemptions were granted under Kaiser's policy, and, if so, whether the criteria employed displayed any predilections towards one belief system over another.  When a Court "can only speculate" about "the *possibility* that a plaintiff might later establish some set of undisclosed facts to support record," the complaint cannot "survive a motion to dismiss."  *McCleary-Evans*, 780 F.3d at 586–87 (emphasis in original) (internal alterations and quotations omitted).

Chinnery has not plausibly alleged that she faced disparate treatment "because of" her

14

religion.  42 U.S.C. § 2000e-2(a)(1).  She has pled only that she was fired because of her refusal to comply with a facially neutral condition of employment.  Consequently, the Court will dismiss without prejudice Count II of the Amended Complaint.

    **C.**    **Retaliation**

Chinnery's retaliation claim fairs little better.  Title VII renders it unlawful "for an employer to discriminate against any of his employees or applicants" because they have (i) "opposed any practice made [] unlawful" by Title VII or (ii) "made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing" under Title VII.  42 U.S.C. § 2000e-3(a).  The antiretaliation provision shields employees from adverse employment activity as a result of conduct protected by law.  *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 174 (2011).  Unlike a discrimination claim, relation requires an employee to show "that relation was a but-for cause of a challenged adverse employment action."  *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 252 (4th Cir. 2015); *accord Nassar*, 570 U.S. at 360 ("Title VII retaliation claims must be proved according to traditional principles of but-for causation").

A plaintiff can establish a primae facie case of retaliation by plausibly pleading that (1) she engaged in protected activity, (2) her employer took a materially adverse actions against her and (3) there was a causal link between the two events.  *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 271 (4th Cir. 2015).  To establish this causal nexus, a plaintiff may allege either "the existence of facts that suggest that the adverse action occurred because of the protected activity" or that "the adverse act bears sufficient temporal proximity to the protected activity."  *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 123 (4th Cir. 2021) (internal quotations and citations omitted).

15

Chinnery channels her claim through this second route and notes that the "very close time period" between her protected activities and her termination — her offer of employment was rescinded four days after she notified Kaiser that she intended to file a religious discrimination complaint — forges the "requisite causal connection."  (AC ¶ 75).  In response, Kaiser suggests that a failure to accommodate claim necessarily precludes a retaliation claim, relying on an out-of-Circuit district court opinion.  (*See* Def.'s Br. at 10–11 (citing *Sambrano v. United Airlines, Inc.*, — F. Supp. 3d —, 2023 WL 8721437, at *9 (N.D. Tex. Dec. 18, 2023))).  The Court disagrees insofar as Kaiser advances a *per se* rule.  A plaintiff can plausibly allege that she both requested an accommodation unsuccessfully and faced retaliatory conduct stemming not from the original policy but from hostility towards her tenacity to engage in lawfully protected activities.  One cause of action does not categorically defeat the other.

As applied to these facts, however, Kaiser stands on firmer footing.  Chinnery pleads two acts that she claims constitute protected activity:  her June 28 application for a religious accommodation to Kaiser's vaccine mandate and her July 8 email to Kaiser informing it that she planned to file a religious discrimination complaint.  (AC ¶¶ 70–71).  She also claims an adverse action from her termination four days later, on July 12.  Assuming both to be true, Chinnery has not plausibly established that she was fired because of her protected activities.  *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007).

Employment policies prescribed *before* Chinnery engaged in her protected activity cannot form the basis of retaliation when implemented *after* her protected activity.  Kaiser announced that it would condition employment on receipt of a COVID-19 vaccine or a qualifying exemption before any protected activity by Chinnery.  She subsequently failed to obtain either.  The

16

natural corollary was Kaiser's termination of Chinnery.

As Chinnery herself pleads, Kaiser informed Chinnery of its vaccine policy at least by June 28. (AC ¶ 15). It warned her on July 2 that she would be let go if she failed to comply with that policy. (AC ¶ 24). And Chinnery received a final denial of her accommodation on July 7, leaving her with two options: vaccinate or vacate the position. It was only after this final denial that Chinnery informed Kaiser of her plans to file a religious discrimination claim. "Employers need not suspend previously planned [employment decisions] upon discovering that a Title VII [complaint] has been [lodged]." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001). It is of no occasion that Kaiser executed that decision after Chinnery's protected activity; an employer "proceeding along lines previously contemplated, though not yet definitively determined, is not evidence of causation." *Id.*

The "relevant facts alone" do not "establish a causal connection between the protected activity and the adverse action," nor can "temporal proximity" plug the gaps. *Roberts*, 998 F.3d at 123. Temporal proximity "has minimal probative value in a retaliation case where intervening events between the employee's protected conduct and the challenged employment action provide a legitimate basis for the employer's action." *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 1001–02 (10th Cir. 2011); *accord Cheshewalla v. Rand & Son Constr. Co.*, 415 F.3d 847, 852 (8th Cir. 2005) ("intervening events erode[] any causal connection suggested by [] temporal proximity") (internal quotations omitted). Here, intervening events — Chinnery's failure to obtain a COVID shot or to qualify for an exemption — shatter any inferential temporal link between her protected activity and Kaiser's conduct. Indeed, Chinnery herself acknowledges that her employment offer was "rescinded . . . for failure to comply with

17

[Kaiser's] Covid-19 vaccination policy." (AC ¶ 33). She pleads no basis to assume that enforcement of the preexisting vaccine policy served as a superficial patina to retaliate against her protected conduct. Because Chinnery has not plausibly alleged that Kaiser discharged her because of her protected activity — rather than because of Kaiser's preexisting vaccination policy — the Court will dismiss without prejudice Count III of the Amended Complaint.

## IV. CONCLUSION

The crux of this action constitutes Chinnery's belief that she was the victim of Kaiser's religious animus. But the Amended Complaint stands bereft of any basis to brand Kaiser with such an odious label. Even viewing the facts in the light most favorably to Chinnery, Kaiser did not vilify her for her faith; Kaiser simply and reasonably sought to avoid morbific employees operating its healthcare facilities. Chinnery did not plead — or inform Kaiser of — a sincerely held religious belief that conflicted with Kaiser's vaccine policy. Her termination for breaching that policy does not evince disparate treatment, nor was her discharge an act of retaliation. Because Chinnery has not pled a plausible claim upon which relief can be granted, the Court will GRANT Kaiser's Motion to Dismiss (ECF No. 17).

An appropriate Order will issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

It is so ORDERED.

/s/
David J. Novak
United States District Judge

Alexandria, Virginia
Date: June 24, 2024